UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
STATE NATIONAL INSURANCE COMPANY,              Civil Case No.: _____

                        Plaintiff,              **COMPLAINT FOR**
                                                                   **DECLARATORY**
        v.                                                    **JUDGMENT WITH**
                                                                     **JURY DEMAND**

NATIONWIDE PROPERTY & CASUALTY
INSURANCE COMPANY and
NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,

                        Defendants.
------------------------------------------------------------------------x

       Plaintiff, STATE NATIONAL INSURANCE COMPANY ("SNIC"), by and through its attorneys, STEWART SMITH, alleges the following as its Complaint for Declaratory Judgment against defendants NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY ("NPCIC") and NATIONWIDE MUTUAL FIRE INSURANCE COMPANY ("NMFIC") (collectively herein, "Nationwide"):

## NATURE OF THE ACTION

       1.     This is an action for declaratory relief and contribution arising from the breach of Nationwide's obligations to provide additional insured coverage under a general liability insurance policy and an excess liability insurance policy that were issued to non-party Laredo Electric Inc. ("Laredo"), in connection with a construction site accident involving a Laredo employee, non-party Rohon John, and his subsequent lawsuit.

       2.     Laredo was a subcontractor that contracted to perform certain construction work at a project located at 1182 Broadway, 2nd Floor, in New York, New York (the "Project"). In its subcontract, Laredo agreed to provide primary and non-contributory additional insured coverage

for non-party Howard M. Haimes Inc. ("Haimes"), which was subsequently sued by Laredo's employee, Rohon John, who was allegedly injured while working at the Project.

3. NPCIC issued a commercial general liability ("CGL") policy to Laredo and NMFIC issued an umbrella liability policy to Laredo (collectively, the "Nationwide Policies"), which were both in effect on the date of Mr. John's alleged injury.

4. **_Nationwide has conceded_** that Haimes "does qualify as an additional insured" under its CGL policy, and that "if a party is an insured under the primary [CGL] policy, the party will also be an insured under the umbrella policy."

5. Nationwide is obligated to provide additional insured coverage to Haimes, which was sued in the *John* lawsuit, but it has breached its policies and has failed to defend and indemnify Haimes in the *John* lawsuit.

6. SNIC issued a commercial general liability insurance policy to its named insured, Haimes, and SNIC has been providing a defense to Haimes in the *John* lawsuit, despite Nationwide's primary and non-contributory obligation to do so.

7. SNIC is entitled to a judgment declaring (1) that Haimes is an additional insured under the Nationwide Policies and requiring that Nationwide defend Haimes on a primary, non-contributory basis in the *John* Lawsuit; (2) requiring that Nationwide pay any verdict, judgment or settlement in the *John* Lawsuit on Haimes' behalf on a primary and non-contributory basis; and (3) requiring that Nationwide reimburse SNIC for all costs that it has incurred in defending Haimes in the *John* Lawsuit, from the date of first tender of the Lawsuit to the present, including interest from the date of SNIC's payment of each invoice, at the statutory rate of nine percent (9%) per year.

**THE PARTIES**

8.      Plaintiff, SNIC, is and at all pertinent times was a foreign business corporation, duly organized under the laws of the State of Texas, with its principal place of business located at 1900 L Don Dodson Drive, Bedford, Texas 76021. SNIC is authorized to conduct, and does conduct, business in New York. SNIC issued a CGL policy to Haimes in New York.

9.      Defendant, NPCIC, is and at all pertinent times was a foreign business corporation, duly organized under the laws of the State of Ohio, with its principal place of business located in Columbus, Ohio. NPCIC is authorized to conduct, and does conduct, business in New York. NPCIC issued a CGL policy to Laredo in New York.

10.     Defendant, NMFIC, is and at all pertinent times was a foreign business corporation, duly organized under the laws of the State of Ohio, with its principal place of business located in Columbus, Ohio. NMFIC is authorized to conduct, and does conduct, business in New York. NMFIC issued an umbrella policy to Laredo in New York.

**JURISDICTION AND VENUE**

11.     Subject matter jurisdiction is based upon 28 U.S.C.A. § 1332 and 28 U.S.C.A. § 2201, because the action involves citizens of different states and the amount in controversy exceeds the sum of $75,000. An actual controversy exists between the parties regarding their respective rights and obligations under the relevant insurance policies.

12.     Personal jurisdiction over NPCIC is proper, in that it transacts and/or conducts insurance business in the State of New York.

13.     Personal jurisdiction over NMFIC is proper, in that it transacts and/or conducts insurance business in the State of New York.

14. Venue is proper under 28 U.S.C.A. § 1391, because the accident alleged in the *John* lawsuit giving rise to the instant insurance coverage lawsuit took place within this district.

## THE *JOHN* LAWSUIT

15. SNIC seeks a declaratory judgment concerning Nationwide's coverage obligations with respect to Mr. John's lawsuit, captioned *Rohon John v. MOCAL Enterprises Inc., et al.*, filed at Index No. 509402/2017, in the Supreme Court of the State of New York in Kings County (the "*John* Lawsuit"). *See John* Amended Verified Complaint (true and correct copy attached as **Exhibit A**).

16. The *John* Lawsuit alleges that Haimes was a general contractor for certain construction and/or renovation at the Project. *See* **Exhibit A** (*John* Complaint), ¶ 6.

17. Mr. John testified that at the time of his injury, on September 11, 2015, he was working for Laredo at the Project. *See* Rohon John Deposition, at 10, 14-15 (true and correct copy attached as **Exhibit B**).

18. At his deposition, Mr. John testified that he was injured when the ladder that he was standing on moved and fell, and he fell on the floor. *See* **Exhibit B** (*John* Deposition), at 56-57.

19. Mr. John further testified that just before his accident occurred, he was looking at the wall, and not the ladder that he was standing on that fell. *See* **Exhibit B** (*John* Deposition), at 54-55.

## THE SUBCONTRACT AGREEMENT

20. Prior to Mr. John's alleged accident, on or about July 28, 2015, Haimes and Laredo executed an agreement for Laredo to perform electrical work at the Project (the "Agreement"). *See* Agreement (true and correct copy attached as **Exhibit C**).

21. Also prior to Mr. John's alleged accident, on or about July 28, 2015, Haimes and Laredo executed an insurance rider to the Agreement (the "Insurance Rider"). *See* Insurance Rider (true and correct copy attached as **Exhibit D)**.

22. Under the Agreement, Laredo was required to "obtain, pay for and keep in force" a comprehensive general liability insurance policy which "shall name [Haimes], the owner of the project, and any designated entities that the owner is required to provide insurance for under contract (hereinafter referred to as the 'insured parties') as additional insured." *See* **Exhibit C** (Agreement), INSURANCE REQUIREMENTS, ¶¶ 1, 1(b).

23. The Insurance Rider required that the insurance obtained by Laredo "must be maintained on a primary, non-contributory basis." *See* **Exhibit D** (Insurance Rider), ¶ I.

24. At all pertinent times, it was Laredo's and Haimes' intention that Haimes would be named as an additional insured under a CGL insurance policy issued to Laredo; that such additional insured coverage would be primary and non-contributory; and that Haimes' own insurance would be excess to Laredo's insurance.

25. The Agreement also contained a hold harmless provision, requiring Laredo to indemnify, defend and hold harmless Haimes and all of the "insured parties" from all claims, including litigation expenses and attorneys' fees arising out of Laredo's work and "caused in whole or in part by any negligent … act or omission or strict liability attributable to [Laredo] or any of its employees … regardless whether caused in part by a party indemnified hereunder." *See* **Exhibit C** (Agreement), ¶ 5.

26. Under the Agreement, Laredo agreed that it was "fully and solely responsible for safety and security on the site"; that it "shall be responsible for initiating, maintaining and supervising all safety precautions and programs" in connection with its work on the Project; and

that it "shall take all reasonable precautions to ensure the safety of, and shall provide all reasonable protection to prevent injury or loss to" its employees. *See* **Exhibit D** (Insurance Rider), ¶ IV.

## THE INSURANCE POLICIES

### The Nationwide CGL Policy

27. NPCIC issued CGL insurance policy number ACP GLKO 301 663 0171 to Laredo, for the policy period from June 24, 2015 to June 24, 2016 (the "Nationwide CGL Policy"). *See* Nationwide CGL Policy (true and correct copy attached as **Exhibit E**), at 58.

28. The Nationwide CGL Policy has limits of insurance in the amount of $1 million per occurrence, and $2 million general aggregate. *See* **Exhibit E** (Nationwide CGL Policy), at 58.

29. The Nationwide CGL Policy provides additional insured coverage to "any person(s) or organization(s) … with whom [Laredo has] agreed in writing in a contract or written agreement that such person or organization be added as an additional insured on [Laredo's] policy." *See* **Exhibit E** (Nationwide CGL Policy), at 114, ¶ H.1.

30. As noted above, Laredo agreed in writing in a written agreement that its CGL policy shall name Haimes as an additional insured on a primary and non-contributory basis.

31. With respect to contractor Haimes, it is an "insured" on Laredo's CGL Policy "with respect to liability for 'bodily injury' … caused, in whole or in part, by [Laredo's] acts or omissions, or the acts or omissions of those acting on [Laredo's] behalf." *See* **Exhibit E** (Nationwide CGL Policy), at 115, ¶ H.2.d.

32. Therefore, Haimes is an "insured" on Laredo's CGL Policy in connection with Laredo's employee's, Rohon John's, alleged injury.

33. Notably, ***Nationwide has conceded*** that Haimes "does qualify as an additional insured" under the Nationwide CGL policy, in connection with the *John* Lawsuit. *See* June 1,

6

2017 Nationwide letter accepting coverage for the *John* Lawsuit (true and correct copy attached as **Exhibit F**), at 7.

34.  Also notably, **_Nationwide has conceded_** that the "defense and indemnification coverage coverage" that it owes to Haimes in connection with the *John* Lawsuit is "on a primary and non-contributory basis" under the Nationwide CGL Policy.  See **Exhibit F** (Nationwide acceptance letter), at 8.

35.  In addition to Haimes, the Nationwide CGL Policy also provides additional insured coverage to "any other person or organization [Laredo is] required to add as an additional insured under the contract or agreement described in Paragraph 1. above."  See **Exhibit E** (Nationwide CGL Policy), at 114, ¶ H.2.

36.  Therefore, to the extent that the Agreement requires Laredo to provide additional insured coverage to any other organization, paragraph H.2 provides such coverage to such additional organization(s).  See **Exhibit E** (Nationwide CGL Policy), at 114, ¶ H.2.

37.  In addition to Haimes, the Agreement requires that Laredo also provide additional insured coverage for "the owner of the project, and any designated entities that the owner is required to provide insurance for under contract."  See **Exhibit C** (Agreement), INSURANCE REQUIREMENTS, ¶¶ 1, 1(b).

38.  Thus, in addition to Haimes, the Nationwide CGL Policy also provides additional insured coverage for the "the owner of the project, and any designated entities that the owner is required to provide insurance for under contract."  See **Exhibit C** (Agreement), INSURANCE REQUIREMENTS, ¶¶ 1, 1(b); **Exhibit E** (Nationwide CGL Policy), at 114, ¶ H.2.

39.  The Nationwide CGL Policy also provides coverage for bodily injury liability assumed by Laredo in a contract or agreement that is an "insured contract," which is defined as

including "that part of any … contract or agreement … under which [Laredo] assumes the tort liability of another party to pay for 'bodily injury' … to a third person or organization." *See* **Exhibit E** (Nationwide CGL Policy), at 68, ¶ I.2.b.(2); 80, ¶ V.9.f.

40. Therefore, the Nationwide CGL Policy also provides coverage for Haimes' tort liability that was assumed by Laredo in the indemnification provision in its Agreement with Haimes. *See* **Exhibit C** (Agreement), ¶ 5.

41. Likewise, the Nationwide CGL Policy also provides coverage for the tort liability of all of the other "insured parties" identified in the Agreement, whose tort liability was assumed by Laredo in the indemnification provision in its Agreement with Haimes. *See* **Exhibit C** (Agreement), ¶ 5.

### The Nationwide Umbrella Policy

42. NMFIC issued umbrella liability insurance policy number ACP CAF 301 663 0171 to Laredo for the policy period from June 24, 2015 to June 24, 2016 (the "Nationwide Umbrella Policy"). *See* Nationwide Umbrella Policy (true and correct copy attached as **Exhibit G**), at 5.

43. The Nationwide CGL Policy and Nationwide Umbrella Policy (collectively, the "Nationwide Policies") were both in force and effect on September 11, 2015, the accident date alleged in the *John* Lawsuit.

44. The Nationwide Umbrella Policy has limits of insurance in the amount of $3 million per occurrence, and $3 million general aggregate. *See* **Exhibit G** (Nationwide Umbrella Policy), at 5.

45. Coverage A of the Nationwide Umbrella Policy provides excess follow form liability insurance, which provides that the "terms and conditions of 'underlying insurance' are …

made a part of this policy," except where a contrary provision is contained in the Nationwide Umbrella Policy.  See **Exhibit G** (Nationwide Umbrella Policy), at 10, ¶ A.1.

46. As to Coverage A, the Nationwide Umbrella Policy provides that "any additional insured under any policy of 'underlying insurance' will automatically be an 'insured' under [the Nationwide Umbrella Policy]."  See **Exhibit G** (Nationwide Umbrella Policy), at 22, ¶ B.2.c.

47. The Nationwide CGL Policy is identified on the Nationwide Umbrella Policy's Schedule of Underlying Insurance as underlying insurance.  See **Exhibit G** (Nationwide Umbrella Policy), at 8.

48. Notably, ***Nationwide has conceded*** that "if a party is an insured under the primary [CGL] policy, the party will also be an insured under the umbrella policy."  See **Exhibit F** (Nationwide acceptance letter), at 8.

49. Therefore, because Haimes is an additional insured under the underlying Nationwide CGL Policy in connection with the *John* Lawsuit (***as Nationwide has conceded***), Haimes is also an "insured" under the Nationwide Umbrella Policy.

50. Thus, both Nationwide Policies provide coverage to Haimes in connection with the *John* Lawsuit.

51. SNIC issued CGL policy number CTM 1401151 to Haimes, for the policy period from April 11, 2015 to April 11, 2016 (the "SNIC Policy").

52. Because Nationwide breached its obligations under the Nationwide Policies – ***obligations that Nationwide, itself, has conceded*** – SNIC has been incurring costs defending Haimes in the *John* Lawsuit.

9

**TENDERS TO NATIONWIDE**

53. By letter dated October 2, 2015, National Claim Services (NCS) first tendered the claim to Laredo and Nationwide, seeking defense, indemnification and additional insured status under the CGL and umbrella policies. *See* October 2, 2015 tender letter (true and correct copy attached as **Exhibit H**).

54. By letter dated October 9, 2015, Nationwide declined the claim as premature, because no lawsuit had yet been filed. *See* October 9, 2015 declination letter (true and correct copy attached as **Exhibit I**).

55. After the *John* Lawsuit was filed, NCS tendered the complaint to Nationwide by letter dated June 1, 2017. *See* June 1, 2017 email tendering *John* complaint to Nationwide (true and correct copy attached as **Exhibit J**).

56. By letter dated June 1, 2017, Nationwide accepted coverage and agreed to provide defense and indemnification, without a reservation of rights, under the Nationwide CGL and Umbrella Policies, but its coverage under the Nationwide Umbrella Policy was premised on all underlying primary policies being exhausted before coverage under the Nationwide Umbrella Policy would be triggered. *See* **Exhibit F** (Nationwide acceptance letter), at 8.

57. When NCS requested that Nationwide ensure that its assigned counsel for Haimes would file a third-party action against Laredo, to resolve priority of coverage issues involving when the Nationwide Umbrella Policy would be triggered for indemnification purposes, Nationwide refused to do so, stating that "I do not accept your terms, you need to accept our terms pursuant to our tender acceptance letter." *See* June 2, 2017 email from Nationwide to NCS (true and correct copy attached as **Exhibit K**).

10

58.     To this date, Nationwide has failed to provide contracted-for ***and conceded*** additional insured coverage for Haimes in the *John* Lawsuit, and it has failed to defend Haimes in that Lawsuit.

59.     Nationwide breached its contractual obligations by failing to provide additional insured coverage and defense and indemnification for Haimes in the *John* Lawsuit, ***that it accepted and conceded that it was obligated to provide***.

60.     SNIC has no adequate remedy at law, and it respectfully requests a declaration of its rights and those of Nationwide under CPLR § 3001, including, but not limited to, a declaration (1) that Haimes is an additional insured under the Nationwide Policies and requiring that Nationwide defend Haimes on a primary, non-contributory basis in the *John* Lawsuit; (2) requiring that Nationwide pay any verdict, judgment or settlement in the *John* Lawsuit on Haimes' behalf on a primary and non-contributory basis; and (3) requiring that Nationwide reimburse SNIC for all costs that it has incurred in defending Haimes in the *John* Lawsuit, from the date of first tender of the claim to Nationwide (*i.e.*, from October 2, 2015), including interest from the date of SNIC's payment of each invoice, at the statutory rate of nine percent (9%) per year.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment – Duty to Defend Additional Insured
### Haimes in the *John* Lawsuit)

61.     SNIC repeats and realleges each and every allegation made in paragraphs designated "1" through "60" inclusive, with the same force and effect as if set forth herein.

62.     Haimes qualifies as an additional insured under the Nationwide CGL Policy and the Nationwide Umbrella Policy, ***as Nationwide has conceded***.

63.     The allegations in the *John* Lawsuit against Haimes are covered within the terms of the Nationwide Policies, ***as Nationwide has conceded***.

11

64. Pursuant to the terms of the Nationwide Policies and under the application of New York law, Nationwide has an obligation to defend Haimes in the *John* Lawsuit, on a primary and non-contributory basis, as an additional insured under the Nationwide Policies, again, **_as Nationwide has conceded_**.

65. Pursuant to the terms of the Nationwide Policies and under the application of New York law, Nationwide also has a separate obligation to defend Haimes in the *John* Lawsuit because Laredo assumed the tort liability of Haimes in the Agreement, which is an "insured contract."

66. SNIC timely demanded that Nationwide defend and indemnify Haimes against the claims asserted against it in the *John* Lawsuit, on a primary, non-contributory basis.

67. Although Nationwide has acknowledged in writing that it owes a duty to defend and indemnify Haimes, without a reservation of rights, in connection with the *John* Lawsuit, Nationwide has failed, and continues to fail, to defend Haimes in the *John* Lawsuit.

68. As a direct result of Nationwide's failure to defend Haimes in the *John* Lawsuit on a primary and non-contributory basis, SNIC has incurred costs defending Haimes in the *John* Lawsuit.

69. Based on the foregoing, SNIC respectfully requests a judgment declaring that Haimes is an additional insured under the Nationwide Policies, and requiring Nationwide to defend Haimes in the *John* Lawsuit, on a primary and non-contributory basis.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Declaratory Judgment – Duty to Indemnify for the *John* Lawsuit)**

70. SNIC repeats and realleges each and every allegation made in paragraphs designated "1" through "69" inclusive, with the same force and effect as if set forth herein.

71. Pursuant to the terms of the Nationwide Policies and under the application of New York law, Nationwide has an obligation to indemnify Haimes in the *John* Lawsuit, on a primary

and non-contributory basis, as an additional insured under the Nationwide Policies, for all amounts for which Haimes become legally obligated to pay as damages because of bodily injury in connection with the *John* Lawsuit, **_as Nationwide has conceded_**.

72. Pursuant to the terms of the Nationwide Policies and under the application of New York law, Nationwide also has a separate obligation to indemnify Haimes in the *John* Lawsuit because Laredo assumed the tort liability of Haimes in the Agreement, which is an "insured contract."

73. Although Nationwide has acknowledged in writing that it owes a duty to defend and indemnify Haimes, without a reservation of rights, in connection with the *John* Lawsuit, Nationwide has failed, and continues to fail, to defend Haimes in the *John* Lawsuit.

74. Based on the foregoing, SNIC respectfully requests a judgment declaring that Nationwide is obligated to indemnify Haimes in connection with the *John* Lawsuit, on a primary and non-contributory basis and requiring that Nationwide pay any verdict, judgment or settlement in the *John* Lawsuit on Haimes' behalf on a primary and non-contributory basis.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Declaratory Judgment – Reimbursement of Defense and Indemnity Costs for the *John* Lawsuit)**

75. SNIC repeats and realleges each and every allegation made in paragraphs designated "1" through "74" inclusive, with the same force and effect as if set forth herein.

76. Pursuant to the terms of the Nationwide Policies and under the application of New York law, Nationwide has an obligation to defend Haimes in the *John* Lawsuit, on a primary and non-contributory basis.

77. SNIC has incurred, and continues to incur, expenses including, but not limited to, attorneys' fees and other costs in connection with its defense of Haimes in the *John* Lawsuit.

78. SNIC is entitled to the reimbursement by Nationwide of all of the attorneys' fees and other costs that it has incurred in connection with its defense of Haimes in the *John* Lawsuit, from the date of first tender of the claim to Nationwide (*i.e.*, from October 2, 2015), together with interest from the date of SNIC's payment of each invoice, at the statutory rate of nine percent (9%) per year.

79. Based on the foregoing, SNIC respectfully requests a judgment declaring that Nationwide is obligated to reimburse SNIC for all of the attorneys' fees and costs that it incurred defending Haimes in the *John* Lawsuit, from the date of first tender of the claim to Nationwide (*i.e.*, from October 2, 2015), together with interest from the date of SNIC's payment of each invoice, at the statutory rate of nine percent (9%) per year.

## DEMAND FOR JURY TRIAL

80. SNIC hereby demands a trial by jury in this action for all issues triable by jury.

**WHEREFORE**, Plaintiff SNIC hereby demands judgment against Nationwide, and a declaration as follows:

a. Declaring that Haimes is an additional insured under the Nationwide Policies with respect to the *John* Lawsuit;

b. Requiring that Nationwide defend Haimes in the *John* Lawsuit, on a primary and non-contributory basis;

c. Requiring that Nationwide indemnify Haimes in connection with the *John* Lawsuit, on a primary and non-contributory basis, by paying any verdict, judgment or settlement in the *John* Lawsuit on Haimes' behalf; and

d. Requiring that Nationwide reimburse SNIC for all of the attorneys' fees and costs that SNIC has incurred by defending Haimes in the *John* Lawsuit, from the date of first

tender of the claim to Nationwide (*i.e.*, from October 2, 2015), together with interest from the date of SNIC's payment of each invoice, at the statutory rate of nine percent (9%) per year;

e. Awarding SNIC the costs of suit incurred herein; and

f. Awarding SNIC such other and further relief as this Court deems just and proper.

Dated: March 2, 2023
West Conshohocken, Pennsylvania

                        STEWART SMITH

By: _____/s/ Nancy S. Portney_____
Nancy S. Portney (NY Bar #5726880)
300 Four Falls Corporate Center, Suite 670
West Conshohocken, PA  19428
Phone: 484-344-5323
Fax:    484-534-9470
Email: nportney@StewartSmithLaw.com
*Attorneys for Plaintiff,*
*State National Insurance Company*